Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2256 | **DATE** | 3/31/2003 |
| **CASE TITLE** | Hutchins vs. Fairbanks Capital Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant Fairbanks' motion to dismiss, or in the alternative, motion for summary judgment is granted [#28]. Plaintiff Hutchins' motion for summary judgment on liability is denied [#23]. Hutchins' motion for class certification is denied as moot [#22]. Hutchins' objection to Fairbanks' motion for supplemental authority is overruled as the court did not consider the evidence in making its decision [#42]. This case is terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | MAR 3 1 2003 date docketed | 52 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. Mailed by MD. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 3/31/2003 date mailed notice | |
| MD | courtroom deputy's initials | 03 MAR 31 PM 4:11 Date/time received in central Clerk's Office | MD mailing deputy initials | |

ROBERT HUTCHINS,

    Plaintiff,

vs.

FAIRBANKS CAPITAL CORPORATION,

    Defendant.

No. 02 C 2256
Judge Joan H. Lefkow

## MEMORANDUM OPINION AND ORDER

Plaintiff, Robert Hutchins ("Hutchins") filed this putative class action against defendant, Fairbanks Capital Corporation ("Fairbanks"), pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"). In Count I, Hutchins brings suit individually and on behalf of a putative class of similarly situated individuals alleging violations of § 1692g of the FDCPA because, in a validation of debt notice sent to Hutchins and other putative class members, Fairbanks (1) did not state the amount of the debt; (2) omitted "unbilled fees or costs, if any, such as attorney's fees," so that there is no correlation between the amount stated and either the total amount of the debt or the "total amount to bring your account current;" and (3) required that any dispute regarding the debt be in writing. In Count II, Hutchins individually alleges violation of § 1692e(11) of the FDCPA because monthly statements sent to him seeking payment of his debt to Fairbanks did not contain the required notice under the FDCPA. In Count III, Hutchins individually alleges violation of §§ 1692e, 1692f and 1692f(1) of the FDCPA because Fairbanks assessed late charges while the loan was accelerated. Before the court is Hutchins' motion for summary judgment on liability and Fairbanks' motion to dismiss or, in the

alternative, for summary judgment. The court has jurisdiction over the claims pursuant to 15 U.S.C. § 1692k and 28 U.S.C. § 1331. For the reasons set forth below, Hutchins' motion for summary judgment on liability is denied while Fairbanks' motion to dismiss or, in the alterative, for summary judgment is granted.

## STANDARDS

### A. MOTION TO DISMISS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no facts in support of its claim that would entitle it to relief. *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957); *Kennedy* v. *Nat'l Juvenile Det. Assoc.*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on the motion, the court accepts as true all well-pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002); *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999).

### B. SUMMARY JUDGMENT

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## BACKGROUND

In the fall of 2001, Hutchins had a residential mortgage that was being serviced by EquiCredit Corporation of America ("EquiCredit"). Servicing of the loan was transferred from EquiCredit to Fairbanks effective September 17, 2001. Two days after the transfer of servicing, Fairbanks sent Hutchins a validation of debt letter which stated as follows,

Dear Borrower

> We recently provided you with a letter advising you that Fairbanks Capital Corp. ("Fairbanks") has acquired the servicing rights to your mortgage loan effective September 17, 2001.
>
> \* \* \*
>
> Our records reflect that as of the servicing transfer date your mortgage payments that were due from July 01, 2001 forward have not been received. As of the date of the servicing transfer, the total amount to bring your account current was $1,586.84 including principal, interest, escrows and applicable fees. If your payment has been sent, please accept our thanks.
> Please note that these amounts do not include unbilled fees or costs, if any, such as attorney's fees. Please also note that the information regarding your account is based on information provided to us by your prior mortgage servicer as of the date of the servicing transfer.

3

> Unless you notify us in writing within 30 days after receiving this notice that you dispute the validity of this debt, or any portion of the debt, we will assume that it is valid. If you do notify us in writing within 30 days that you dispute the debt, or any part of the debt, we will provide you with verification of the debt by mail. If you request the name and address of the original creditor in writing within 30 days after receiving this notice, we will provide you with that information.
>
> * * *
>
> This letter is an attempt to collect a debt and any information obtained may be used for that purpose.

(Pl. Mot. Summ. J. Ex. A.) Hutchins alleges that after the letter was sent out, Fairbanks continued to send Hutchins monthly statements seeking payment of the debt and continued to assess late charges subsequent to the acceleration of the loan.

## DISCUSSION

In Count I, Hutchins alleges that Fairbanks violated § 1692g of the FDCPA because the validation notice Fairbanks sent suffered from a number of deficiencies, including that it did not state the full amount of the debt, it omitted unbilled fees or costs and it stated that any dispute had to be in writing. In Count II Hutchins alleges violation of 1692e(11) of the FDCPA because monthly statements Fairbanks sent to Hutchins did not contain the required notice under the FDCPA. Finally, in Count III Hutchins maintains that Fairbanks violated the FDCPA when it assessed late charges against Hutchins after his loan was accelerated.

The threshold issue for the court is whether the FDCPA applies to Fairbanks. By its terms, the FDCPA applies only to "debt collectors." *See* 15 U.S.C. § 1692b ("Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall . . . ."). A "debt collector" is specifically defined to exclude a number of things, including "any person collecting or attempting to collect any debt

4

owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). Thus, if Hutchins' loan was not in default at the time Fairbanks acquired it, Fairbanks is not a debt collector and the FDCPA does not apply. *E.g., Bailey* v. *Security Nat'l Servicing Corp.*, 154 F.3d 384, 387 (7th Cir. 1998).

While the FDCPA does not define "default," the term is explicitly defined in Hutchins' loan documents and the court sees no need to fix a different meaning to the term under the FDCPA when the loan documents present an unambiguous definition. *E.g., Hartman* v. *Meridian Fin. Serv.*, 191 F. Supp. 2d 1031, 1042-43 (W.D. Wis. 2002). Section 7(C) of adjustable rate note entitled "Notice from Note Holder" states,

> If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue by a certain date I will be in default. This date must be at least 10 days after the date on which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered to me.

(Def. Mot. Ex. 1.) Section 7(D), entitled "Default," further provides,

> If I do not pay the overdue amount by the date stated in the notice described in (C) above, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.

(*Id.*)

Fairbanks argues that Hutchins' loan was not in default at the time Fairbanks acquired the servicing rights because Hutchins did not meet the contractual definition of default listed above. Hutchins disagrees, and first argues that section 7 of the note must be read in conjunction with section 10, which provides,

5

> I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest").

(*Id.*) According to Hutchins, part B of this section provides that the notice required under section 7 is optional and not mandatory, which Hutchins believes makes sense because it allows a lender to deal with borrowers who chronically pay late and do not pay late charges and could avoid the possibility that a payment may have been lost or misapplied.

Hutchins' argument, however, is unavailing. Section 10 of the note makes no mention of waiving the borrower's right to require the Note Holder to provide the notice mentioned in paragraph 7(C). Moreover, the term "notice of dishonor" does not relate to the notice necessary to hold Hutchins in default, as that term relates to liability under negotiable instruments. *See* BLACK'S LAW DICTIONARY 1089 (7th ed. 1999) ("Notice to the indorser of an instrument that acceptance or payment has been refused. ● This notice–along with presentment and actual dishonor–is a condition of an indorser's secondary liability.")

Next, Hutchins argues that he satisfies the definition of "default" in the Note because on September 8, 2001, nine days prior to the transfer of the loan, EquiCredit, Fairbanks' predecessor, sent Hutchins a document labeled "Notice of Breach/Default." The document begins by stating "Dear Mr. Hutchins: You are in breach or default of the above referenced Mortgage/Deed of Trust . . . by failing to pay your July 10, 2001 and subsequent mortgage payments." According to Hutchins, the letter does not say that "you will be in breach or default" if you do not pay on a certain date. Hutchins argues that Fairbanks must "stand[] in the shoes of its assignor" and that because the assignor stated that Hutchins was in default, Hutchins was in

6

default for Fairbanks also.

Fairbanks responds by relying on the plain language definition of default in the terms of the contract and by referencing the entire September 8 letter, which has the full title of "Notice of Breach/Default, Intent to Foreclose, Right to Cure." Moreover, Fairbanks argues that this letter was designed to serve as the "Notice for Note Holder" under Section 7(C) of the Note because it states that Hutchins has until October 8, 2001 to cure the "breach/default." The letter also states in a later portion that "[I]f [Hutchins] fail[s] to pay the total amount due by the date specified above, EquiCredit shall exercise it's [*sic*] right to accelerate the sums secured by this Mortgage/Deed of Trust and shall refer this loan to it's [*sic*] attorney to commence foreclosure proceedings."

The court concludes that the letter is what Fairbanks argues it is, merely notice under Section 7(C) of the contract that Hutchins will be held in default if the overdue amount is not paid by October 8, the date listed in the letter. This clearly comports with the contractual requirements under the Note. Nowhere does the letter state that Hutchins is in default–it stated only that he is in breach or default. The contract itself does not allow for default until after the date listed in the Section 7(C) notice letter. Moreover, the contract provides a detailed definition of default. This letter obviously does not come close to fulfilling the contract's definition, as there was no evidence of a letter being sent previously informing the debtor that if any overdue amount is not paid he or she will be in default.

Construing the letter as such, *Schlosser v. Fairbanks Capital Corp.*, –F.3d–, 2003 WL 1401417 (7th Cir. March 20, 2003) is distinguishable. In *Schlosser*, Fairbanks sent a formal notice of default to the plaintiffs informing them that they were in default and that the mortgage

7

would be accelerated if the entire unpaid balance was not paid. *Id.* at *1. This letter also allegedly violated the FDCPA because it did not notify the debtors of their right to contest the debt in writing. *Id.* As it turns out, the plaintiffs' mortgage in *Schlosser* was not in default, and only through mistake did Fairbanks believe it to be so. *Id.* Under these facts, the court concluded that the FDCPA applied to Fairbanks because of its mistaken belief that the debtor was in default. As the court stated, the provision exempting from the FDCPA a debt collector attempting to collect a debt not in default did "not apply because Fairbanks attempted to collect on a debt that it asserted to be in default and because the asserted default existed when Fairbanks acquired the debt." *Id.* at *5. According to the court, any other result would be "implausible" because "[i]t makes little sense, in terms of the conduct sought to be regulated, to exempt an assignee from the application of the FDCPA based on a status it is unaware of and that is contrary to its assertions to the debtor." *Id.* at *4. Thus, the result in *Schlosser* was based on the fact that at the time Fairbanks acquired the debt, it believed the plaintiffs to be in default.

No such facts are present in this case. The record in this case does not support the notion that Fairbanks believed that the debt was in default when it was acquired. The letter Fairbanks sent to Hutchins on September 19 does not say (what would have been mistakenly) that Hutchins was in default. Hutchins attempts to portray Fairbanks as believing that Hutchins was in default based on EquiCredit's letter sent on September 8. As stated above, however, the court does not believe that the September 8 letter either placed Hutchins in default or illustrates that either EquiCredit (or its assignee Fairbanks) believed Hutchins to be in default. The letter does not state definitively that Hutchins is in default, unlike the letter in *Schlosser*, which clearly stated "This letter constitutes formal notice of default." *Id.* at 1. Nor could this letter have held

8

Hutchins in default, as the contractual definition of the term would not have been satisfied until he was sent notice under Section 7(C) of the contract. The September 8 letter fits into the express terms of the contract, in that before Hutchins could be in default, he had to be served with notice telling him that if he did not pay by a certain date listed in the letter, he would in default. No other evidence suggests that either EquiCredit or Fairbanks otherwise thought Hutchins was in default when the assignment was made. Accordingly, the court concludes that Hutchins' loan was not in default when Fairbanks obtained it for servicing. Thus, Fairbanks is not a debt collector under the FDCPA and all Counts of Hutchins' Amended Complaint are properly dismissed.[1]

## CONCLUSION

Fairbanks' motion to dismiss, or in the alternative, motion for summary judgment is granted [#28]. Hutchins' motion for summary judgment on liability is denied [#23]. Hutchins' motion for class certification is denied as moot [#22]. Hutchins' objection to Fairbanks' motion for supplemental authority is overruled as the court did not consider the evidence in making its decision [#42]. This case is terminated.

ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: March 28, 2003

---

[1] In *Schlosser*, the Seventh Circuit discussed in depth the policy reasons why the FDCPA applies only to debt collectors and not to "creditors," meaning those who acquire a debt that is not currently in default. *Schlosser*, 2003 WL 1401417, at *2. The court noted that debt collectors would often have no future contact with a consumer and disregard the consumer's opinion of them, while a creditor may be more concerned with its desire to protect its own good will. *Id.* One can certainly question whether the statutory purposes of the FDCPA, i.e., protection of the consumer, is advanced by allowing a company such as Fairbanks to escape the "debt collector" status and be exempt from the act simply because the debt was not technically in default under the terms of the contract and it did not mistakenly believe the debt to be so. The language of the FDCPA, however, is clear, and from this court's reading of *Schlosser*, it stands for nothing more than if the debt collector believes that the loan is in default, they cannot claim otherwise.